IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TENG YANG,

                Petitioner,

        vs.

MATTHEW CATE,[1] Secretary, California
Department of Corrections and
Rehabilitation,

                Respondent.

No. 2:08-cv-02233-JKS

MEMORANDUM DECISION

Teng Yang, a state prisoner appearing *pro se*, filed a Petition for Habeas Corpus under

28 U.S.C. § 2254.  Yang is currently in the custody of the California Department of Corrections

and Rehabilitation, incarcerated at the Red Rock Correctional Center, Elroy, Arizona.

Respondent has answered, and Yang has replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

In August 2003 Yang was convicted in Butte County Superior Court of Assault with a

Semiautomatic Firearm (Cal. Penal Code, § 245(b).)  The jury also found defendant personally

used a firearm (Cal. Penal Code § 12022.5(a)(1)), personally inflicted great bodily injury (Cal.

Penal Code § 12022.7(a)), and committed the offense for the benefit of a street gang (Cal. Penal

Code § 186.22(b)).  The trial court imposed a 32-year prison sentence, consisting of consecutive

upper terms on the assault count and the street-gang enhancement.  On appeal, the California

---

[1] Matthew Cate, Secretary, California Department of Corrections and Rehabilitation, is
substituted for D.K. Sisto, Warden, California State Prison, Solano.  Fed. R. Civ. P. 25(d).

Court of Appeal, Third District, reversed the street-gang enhancement for insufficient evidence, but otherwise affirmed Yang's convictions and sentence.[2]  After the California Supreme Court denied review, the Supreme Court granted *certiorari*, vacated the California Court of Appeal's decision, and remanded the matter for further consideration in light of *Cunningham v. California*, 549 U.S. 270 (2007).[3]  In turn, the California Court of Appeal remanded the matter for re-sentencing in accordance with the decision of the California Supreme Court in *People v. Sandoval*, 161 P.3d 1146 (Cal. 2007).[4]

On remand the Butte County Superior Court, after striking the enhancement for infliction of great bodily injury, sentenced Yang to a total prison term of 19 years, consisting of consecutive upper terms on the assault conviction and the enhancement for the use of a firearm. On appeal, the California Court of Appeal affirmed Yang's conviction and sentence,[5] and the California Supreme Court denied review on February 25, 2009.  Yang timely filed his Petition in this Court on September 18, 2008, his First Amended Petition on April 3, 2009, and his Second Amended Petition on December 15, 2009.

The facts underlying Yang's conviction are well known to the parties and are set forth in the decision of the California Court of Appeal in both *Yang I* and *Yang II*.[6]  They are not repeated herein, except to the extent the facts are necessary to an understanding of this decision.

---

[2] *People v. Yang*, 2005 WL 3072900 (Cal. App. Nov. 16, 2005) ("*Yang I*").

[3] *Yang v. California*, 549 U.S. 1194 (2007) (Mem.).

[4] *People v. Yang*, 2007 WL 2219286 (Cal. App. Aug 3, 2007) ("*Yang II*").

[5] *People v. Yang*, 2008 WL 5274667 (Cal. App. Dec. 19, 2008) ("*Yang III*").

[6] This Court notes that the decision in *Yang II* (on remand from the Supreme Court) repeats verbatim the decision in *Yang I* except to the extent that *Yang II* addressed the application of *Cunningham* as directed by the Supreme Court.

## II.  GROUNDS RAISED/DEFENSES

In his Second Amended Petition, Yang raises the same four grounds that he raised in his Amended Petition, plus a fifth ground for which he was granted leave to add:[7]  (1) the trial court erred in not ordering that new counsel be appointed to investigate whether Yang's trial counsel was ineffective for failing to request testing of Yang's jacket for the presence of gunshot residue, and that failure rendered Yang's assistance of counsel ineffective; (2) the trial court erred in not excluding Yang's statement to the police under *Miranda*;[8] (3) his due process rights were violated by the trial court's failure to bifurcate the gang enhancement charge; (4) the trial court erred in giving the jury a special instruction on gang membership; and (5) the trial court erred in imposing the upper limit term on both charges of which he was convicted based upon the same evidence.  Yang raised his first four grounds in *Yang I* and *II*, and his fifth ground in *Yang III*. Respondent does not assert any affirmative defense in his Response.[9]

In addition to the ground he was granted leave to add (the fifth ground), Yang also included five additional grounds in his Second Amended Petition.[10]  Contemporaneously with

---

[7] Yang also requested an evidentiary hearing, issuance of a subpoena, appointment of an expert witness, and three requests to conduct discovery.  These requests were previously denied. Docket Nos. 79, 82.  Yang has not renewed these requests.

[8] *Miranda v Arizona*, 384 U.S. 436 (1966).  A short-hand reference to the failure to adequately inform a defendant of his rights to remain silent and to the assistance of counsel.

[9] *See* Rules—Section 2254 Cases, Rule 5(b).

[10]  The additional grounds raised are:  (6) by failing to enlist the services of an expert on the issue of eyewitness identifications his trial counsel was ineffective; (7) by failing to subpoena Tong Xiong as a defense witness his trial counsel was ineffective; (8) juror misconduct during jury deliberations; (9) the bailiff unduly pressured the jury during jury deliberations; and (10) ineffective assistance of appellate counsel.  [Numbering coincides with the numbering in the Second Amended Petition.]

filing his Second Amended Petition, Yang also filed a motion to stay and hold the Second

Amended Petition in abeyance while he exhausted the five additional grounds (six through ten)

in the state courts.[11]  This Court denied Yang's motion and ordered the Respondent to answer the

first five grounds.[12]

Yang had to obtain leave of this Court to file his Second Amended Petition.[13]  Yang was

granted leave to file his Second Amended Petition, but only to add his fifth ground.[14]  Yang's

Second Amended Petition was procedurally unauthorized to the extent that he did not obtain

leave of this Court to add the five additional grounds and, as such, is subject to dismissal.[15]

Because this Court may not consider claims that have not been fairly presented to the state

courts,[16] the Order of this Court denying Yang's motion to stay and hold the Second Amended

Petition in abeyance and directing the Respondent to answer only the first five grounds in the

Second Amended Petition, was the functional equivalent of dismissing the sixth through tenth

grounds.[17]  Those grounds having been effectively dismissed, only the first five grounds are

properly before this Court.

---

[11] Docket No. 51.

[12] Docket No. 53.

[13] Fed. R. Civ. P. 15(a)(2).

[14] Docket No. 49 (granting Yang's Motion at Docket No. 36 to add the claim that re-sentencing him to the upper term on both the assault and the enhancement for use of a firearm violated the *Ex Post Facto* Clause).

[15] *See Federal Sav. & Loan Ins. Corp. v. Molinaro*, 923 F.2d 736, 738 (9th Cir. 1991).

[16] 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).

[17] *See* Rules—Section 2254 Cases, Rules 4, 5.

III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[18]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[19]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[20]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[21]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court

---

[18] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[19] *Williams*, 529 U.S. at 412.

[20] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[21] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

precedent must be objectively unreasonable, not just incorrect or erroneous.[22]  The Supreme

Court has made clear that the objectively unreasonable standard is a substantially higher

threshold than simply believing that the state court determination was incorrect.[23]  "[A]bsent a

specific constitutional violation, federal habeas corpus review of trial error is limited to whether

the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due

process.'"[24]  In a federal habeas proceeding, the standard under which this Court must assess the

prejudicial impact of constitutional error in a state court criminal trial is whether the error had a

substantial and injurious effect or influence in determining the outcome.[25]  Because state court

judgments of conviction and sentence carry a presumption of finality and legality, the petitioner

has the burden of showing by a preponderance of the evidence that he or she merits habeas

relief.[26]

       Most recently in *Richter*, the Court took great pains to fully underscore the magnitude of

the deference required:

       As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on
       federal court relitigation of claims already rejected in state proceedings.  *Cf.*
       *Felker v. Turpin*, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996)
       (discussing AEDPA's "modified res judicata rule" under § 2244).  *It preserves*

---

       [22] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations
omitted).

       [23] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

       [24] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416
U.S. 637, 643 (1974)).

       [25] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v.
Abrahamson*, 507 U.S. 619, 637-38 (1993)).

       [26] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516
U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis
of little more than speculation with slight support").

*authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.*  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[27]

In applying this standard, this Court reviews the last reasoned decision by the state court.[28]  State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[29]  This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[30]

---

[27] *Harrington v. Richter*, 562 U.S. ___, ___, 131 S. Ct. 770, 786-87 (emphasis added).

[28] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[29] *Ylst*, 501 U.S. at 802-03.

[30] *Richter*, 562 U.S. at ___, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

IV.  DISCUSSION

Ground 1:  Test of Jacket for Gunshot Residue

After the verdict was entered, Yang moved for a new trial for insufficiency of the evidence.  Yang also requested that the trial court: (1) order the jacket Yang was wearing be subjected to a gunshot residue ("GSR") test and (2) the appointment of counsel to investigate whether by failing to request a GSR test prior to trial his trial counsel had failed to provide him effective assistance of counsel.  The Butte County Superior Court denied Yang's motion, and the Court of Appeal affirmed, holding:

> *The Court Properly Refused Defendant's New Trial*
> *Motion And Request For Appointment Of Counsel*
> Defendant argues the trial court erred in denying his motion for a new trial based on newly discovered evidence and also in failing to appoint him counsel to investigate whether his attorney failed to provide him with competent assistance in this case.  We reject both arguments.
> After the jury rendered its verdict, defendant filed an ex parte application to request money to have an expert test defendant's jacket for gunpowder residue. In support of this motion, defendant's counsel declared, "It is imperative that a gunshot residue expert be employed to assist in [*sic* ] the defendant in the prosecution of his petition for a new trial.  It is undisputed that the defendant was wearing the jacket seized by the Chico Police department and admitted into evidence at the jury trial at the time of the shooting.  It is also undisputed that the person who shot the victim in this case fired a minimum of 10 rounds from a semi-automatic pistol.  Clearly, the shooters [*sic*] clothing would be covered by gunshot residue.  We believe a [*sic* ] examination of the defendant's jacket would show the lack of gunshot residue.  Such evidence would justify the granting of a new trial as a different result at a new trial would surely occur."  The trial court denied this motion.
> Defendant followed up this motion with a motion to have the jacket released to him, citing the same facts in his attorney's declaration.  The trial court took this motion as a motion for a new trial based on the claim the results of the gunshot residue test constituted new evidence.  During oral argument, defendant's counsel invited the court to appoint counsel to examine whether he failed to provide competent assistance to his client by failing to have the jacket tested before or during trial.  The court rejected the new trial motion finding the decision not to test the jacket appeared to be a deliberate tactical decision by counsel.  The court also refused to appoint counsel for defendant to investigate the

8

ineffectiveness of defense counsel, concluding that counsel's decision not to test the jacket did not fall to the level of inadequate or incompetent assistance.

A

*Motion For New Trial*

As the trial court did, we shall assume a test of the jacket would have uncovered an absence of gunshot residue. The question then becomes would the absence of gunshot residue constitute new evidence such that a new trial should have been ordered.

Under Penal Code section 1181, "When a verdict has been rendered or a finding made against the defendant, the court may, upon his application, grant a new trial, in the following cases only: [¶] . . . [¶] 8. When new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as, under all circumstances of the case, may seem reasonable."

"'In ruling on a motion for new trial based on newly discovered evidence, the trial court considers the following factors: "'1. That the evidence, and not merely its materiality, be newly discovered; 2. That the evidence be not cumulative merely; 3. That it be such as to render a different result probable on a retrial of the cause; 4. That the party could not with reasonable diligence have discovered and produced it at the trial; and 5. That these facts be shown by the best evidence of which the case admits.'"' [Citation.] '[U]nless a clear abuse of discretion is shown, a denial of the motion will not be interfered with on appeal.' [Citation.]" (*People v. Beeler* (1995) 9 Cal.4th 953, 1004.)

In *People v. Martinez* (1984) 36 Cal.3d 816, 819, the jury convicted defendant of a commercial burglary. The prosecution's case "rested entirely on" the fact that the defendant's palm print was found on a drill press located on the property the morning after the burglary. (*Id.* at p. 822.) The evidence presented at trial was that the press had been cleaned, dried, and freshly painted the afternoon of the burglary, and there was thus no legitimate explanation for the presence of the defendant's palm print on the item. (*Id.* at pp. 819-820.) In support of his motion for a new trial, the defendant presented the affidavit of the shop foreman that the drill press had been painted at least a couple days prior to the burglary, at a time when the defendant had innocent explanations for having touched the press. (*Id.* at pp. 820-821.) Further, the witness averred that the drill press could not have been painted the day of the burglary because the paint used takes at least 10 to 12 hours to dry. (*Id.* at p. 821.) The trial court denied the motion concluding defendant's counsel failed to use due diligence to locate the foreman and the evidence would not render a different result probable on retrial. (*Ibid.*) The Supreme Court reversed. (*Id.* at p. 827.) The court concluded that the new evidence was central to this case and "exposed a serious gap in the prosecution's

9

proof." (*Id.* at p. 822)  The court concluded, "Numerous cases hold that a motion for a new trial should be granted when the newly discovered evidence contradicts the strongest evidence introduced against the defendant.  [Citations.]"  (*Id.* at p. 823.)  This newly discovered evidence fit this criterion. (*Ibid.*)

The court then turned to the question of diligence.  (*People v. Martinez, supra,* 36 Cal.3d at p. 824.)  The court concluded that it should have been apparent to the defense that the foreman might have evidence relevant to the case. (*Id.* at p. 824.)  However, the court continued, "We do not believe, however, that this lack of diligence is a sufficient basis for denial of defendant's motion.  The requirement of diligence serves 'a public policy which demands that a litigant exhaust every reasonable effort to produce at his trial all existing evidence in his own behalf, to the end that the litigation may be concluded.'  [Citations.]  That policy, however, itself serves a more fundamental purpose—the determination of guilt and innocence.  Loyal to that higher purpose, some California cases suggest that the standard of diligence may be relaxed when the newly discovered evidence would probably lead to a different result on retrial.[fn.]  [Citations.]  On the other hand, we have found none which declare that although newly discovered evidence shows the defendant was probably innocent, he must remain convicted because counsel failed to use diligence to discover the evidence."  (*Id.* at p. 825.)  "Once a trial court determines that a 'defendant did not have a "fair trial on the merits, and that by reason of the newly discovered evidence the result could reasonably and probably be different on a retrial,"' [citation], it should not seek to sustain an erroneous judgment imposing criminal penalties on the defendant as a way of punishing defense counsel's lack of diligence."  (*Ibid.*)  "The focus of the trial court, however, should be on the significance and impact of the newly discovered evidence, not upon the failings of counsel or whether counsel's lack of diligence was so unjustifiable that it fell below constitutional standards."  (*Id.* at p. 826.)

As explained in *People v. Dyer* (1988) 45 Cal.3d 26, 52, the holding in *Martinez,* does not mean "a defendant is entitled to a new trial whenever evidence that was not presented at a previous trial is sought to be offered on retrial.  The evidence generally *must* be newly discovered."  Further, the *Dyer* court explained the rule in *Martinez,* comes into play only when the prosecution's case is extremely weak.  (*Dyer,* at p. 52.)

Here, the trial court did not abuse its discretion in concluding the absence of gunshot residue on defendant's jacket could not be considered newly discovered evidence.  First, defendant was on notice of the potential importance of this fact from his initial interview by the detectives, where they agreed the absence of gunshot residue might clear his name.  Further, this jacket was admitted into evidence in this case, as was the fact that the shooter fired many shots from a semiautomatic handgun.

Further, in this case, unlike in *Martinez,* the entire case did not hinge on a single piece of circumstantial evidence, whose existence was directly contradicted by the "new" evidence.  Here, the evidence defendant was the shooter was elicited from four separate eyewitnesses.  This evidence was countered by vigorous cross-

examination and the testimony two different eyewitnesses claiming defendant was not the shooter.

On the other hand, the new evidence of the lack of gunshot residue may or may not have demonstrated defendant was the shooter.  The residue could have been washed off or destroyed by defendant or dissipated through the passage of time.

In short, this is not a case where defendant was denied a fair trial on the merits, and that by reason of newly discovered evidence the result could reasonably and probably be different on retrial. (*People v. Martinez, supra,* 36 Cal.3d at p. 825.)  Rather, this evidence was known to defendant, readily available to him through the exercise of reasonable diligence before and during trial, and would not render a different result probable on the retrial of this case.  The trial court thus did not err in denying defendant's motion.

B

*Request For Counsel*

We turn to defendant's request for independent counsel to examine whether his attorney was ineffective for not testing the jacket.

Our Supreme Court has stated: "'When, after trial, a defendant asks the trial court to appoint new counsel to prepare and present a motion for new trial on the ground of ineffective assistance of counsel, the court must conduct a hearing to explore the reasons underlying the request.  [Citations.]  If the claim of inadequacy relates to courtroom events that the trial court observed, the court will generally be able to resolve the new trial motion without appointing new counsel for the defendant.  [Citation.]  If, on the other hand, the defendant's claim of inadequacy relates to matters that occurred outside the courtroom, and the defendant makes a "colorable claim" of inadequacy of counsel, then the trial court may, in its discretion, appoint new counsel to assist the defendant in moving for a new trial.'"  (*People v. Smith* (1993) 6 Cal.4th 684, 692-693.)  The defendant must establish "trial counsel failed to perform with reasonable diligence and that, as a result, a determination more favorable to the defendant might have resulted in the absence of counsel's failings."  (*Id.* at p. 691.)  The court held, "substitute counsel should be appointed when, and only when, . . . in the exercise of its discretion, the court finds that the defendant has shown that a failure to replace the appointed attorney would substantially impair the right to assistance of counsel [citation], or, stated slightly differently, if the record shows that the first appointed attorney is not providing adequate representation or that the defendant and the attorney have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citation]."  (*Id.* at p. 696 .)  The decision to appoint new counsel lies in the sound discretion of the trial court and "will not be overturned on appeal absent a clear abuse of that discretion." (*Ibid.*)

Here, the trial court did not abuse its discretion in concluding defendant failed to present a colorable claim of inadequacy of defense counsel in deciding not to test the jacket for gunshot residue.  The issue of the decision to test or not test the jacket relates to courtroom events observed by the trial court.  The trial

11

centered on the testimony of four eyewitnesses who testified defendant was the shooter. Defendant's counsel ably cross-examined those witnesses and pointed out many inconsistencies in their testimony and their prior statements as we have detailed above. Furthermore, defendant presented the testimony of two witnesses who claimed defendant was not the shooter. As the case was submitted to the jury, no physical evidence tied defendant to the crime.

In this case, the absence of gunshot residue on the jacket would have little or no probative value. First, there was no evidence presented to the trial court that gunpowder residue would or would not be deposited on defendant's jacket if he fired the gun. It was only the unsubstantiated surmise of counsel that this would occur. Further, no evidence established that any gunshot residue that was deposited on the jacket would or would not have dissipated on its own, or might have been removed by actions of defendant or others during the nine days between the shooting and the date the jacket was seized. Given this, the absence of residue would have proved very little. On the other hand, a positive test of the jacket for gunshot residue would have presented the only physical evidence tending to connect defendant with the shooting. Under the discovery statutes, defendant would have been faced with a decision as to what to do with that damning physical evidence. Further, the mere fact that defendant obtained the jacket to inspect it would have alerted the prosecution to the possibility of this damning evidence.

Thus, faced with the potential the jacket did have gunshot residue on it, and the limited probative value of a negative test, it was a prudent tactical decision for the defense to forego testing of the jacket. The trial court did not err in this conclusion.[31]

Although it is not entirely clear, it does not appear that Yang is challenging the sufficiency of the evidence in this Court. In his Petition to this Court, Yang contends the trial court erred in denying his request for a GSR test of the jacket or, in the alternative, to appoint new counsel to investigate the effectiveness of his trial counsel.

In upholding the trial court's denial of Yang's request to order a GSR test of the jacket, the California Court of Appeal ruled solely upon the basis of the requirements of California law for ordering a new trial. Whether the California court properly applied state law is of no concern

---

[31] *Yang II*, 2007 WL 2219286 at *17-*21 (alterations in the original).

to this Court.[32]  A petitioner may not transform a state-law issue into a federal one by simply

asserting a violation of due process.[33]  "[The Supreme Court has] long recognized that a mere

error of state law is not a denial of due process."[34]  "[A]bsent a specific constitutional violation,

federal habeas corpus review of trial error is limited to whether the error 'so infected the trial

with unfairness as to make the resulting conviction a denial of due process.'"[35]  "'Federal courts

hold no supervisory authority over state judicial proceedings and may intervene only to correct

wrongs of constitutional dimension.'"[36]  Whether Yang was entitled to a new trial in this case did

not raise an issue of constitutional dimension.

　　To the extent that Yang claims he was denied the effective assistance of counsel, that

right, embodied in the Sixth Amendment, does present a question of constitutional dimension

cognizable by this Court in this proceeding.[37]  Under *Strickland*, to demonstrate ineffective

assistance of counsel, Petitioner must show both that his counsel's performance was deficient

and that the deficient performance prejudiced his defense.[38]  A deficient performance is one in

---

[32] *Swarthout v. Cooke*, 562 U.S. ___, ___, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).

[33] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

[34] *Cooke*, 562 U.S. at ___, 131 S. Ct. at 863 (internal quotation marks and citations omitted).

[35] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[36] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)); *see Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).

[37] Although directed at the failure to appoint independent counsel to investigate whether his trial counsel was ineffective, this Court, liberally construing the arguments of Yang, a *pro se* prisoner, treats it as alleging that Yang was denied the effective assistance of counsel.

[38] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[39]  Yang must show that his trial counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[40]  An analysis that focuses "solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."[41]

*Strickland* and its progeny do not mandate that this Court act as a "Monday morning quarterback" in reviewing tactical decisions.[42]  In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro, supra,* at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The

---

[39] *Id.*

[40] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[41] *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *see Strickland*, 466 U.S. at 687; *see also Kimmel v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect"); *United States v. Cronic*, 466 U.S. 648, 258 (1984) ("the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.  Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.").

[42] *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[43]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[44]

The Supreme Court, applying the "doubly deferential standard," has made clear that when adjudicating ineffective assistance of counsel claims in federal habeas proceedings, unlike the situation on direct review, focus is not on whether counsel's performance fell below the *Strickland* standard. Rather, the focus is on whether the state-court decision holding that counsel was not ineffective constituted an "*unreasonable* application of federal law[,][which] is different from an *incorrect* application of federal law."[45]

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.[46]

While judicial inquiry into counsel's performance under *Strickland* must be highly deferential, it is "by no means insurmountable," but nonetheless remains "highly demanding."[47]

"Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair

---

[43] *Knowles v. Mirzayance*, 556 U.S. ___, ___, 129 S. Ct. 1411, 1420 (2009).

[44] *See id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

[45] *Richter*, 562 U.S. at ___, 131 S. Ct. at 785 (emphasis in the original).

[46] *Id.* at ___, 131 S. Ct. at 786.

[47] *Kimmelman*, 477 U.S. at 382.

trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial."[48]

Yang bears the burden of proving that counsel's trial strategy was deficient.  "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[49]  "[Yang] bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy."[50]  "In determining whether the defendant received effective assistance of counsel, 'we will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight,' but rather, will defer to counsel's sound trial strategy."[51]  "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment."[52]

"A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."[53]  The court must then consider those acts or omissions against "prevailing professional norms."[54]  Even then, "counsel is strongly presumed to have rendered adequate

---

[48] *Id.*

[49] *Strickland*, 466 U.S. at 689.

[50] *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001).

[51] *Id.* (quoting *Strickland*, 466 U.S. at 689).

[52] *Strickland*, 466 U.S. at 681.

[53] *Id.* at 690.

[54] *Id.*

16

assistance and made all significant decisions in the exercise of reasonable professional judgment."[55]

Yang has not met this heavy burden.  He has shown no evidence indicating that counsel was unreasonable or ineffective for selecting his chosen trial strategy.  He presented no alternate attorney's determination challenging counsel's decision not to seek a GSR test of the jacket.  He has not quoted any "[p]revailing norms of practice as reflected in American Bar Association standards and the like" indicating that counsel acted outside these norms.[56]  Yang has failed to overcome the strong presumption that counsel's performance fell within the wide range of reasonable professional assistance or that his defense was prejudiced by any alleged omission as required by *Strickland-Hill*.

This Court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[57]  Nor, viewing the matter through the doubly-deferential lens of *Mirzayance-Richter*, can this Court find that the state court unreasonably applied the correct legal principle to the facts of Yang's case within the scope of *Andrade-Williams-Schriro*; i.e., the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  Yang is not entitled to relief under his first ground.

---

[55] *Id*.

[56] *Id.* at 688.

[57] 28 U.S.C. § 2254(d).

Ground 2:  *Miranda* Violation

Yang moved the trial court to exclude inculpatory statements he made during his

interrogation by the police on the ground that, although he was read his *Miranda* rights, he did

not affirmatively acknowledge that he understood his rights and did not expressly waive them.

The Butte County Superior Court denied Yang's motion, and on appeal the California Court of

Appeal affirmed that denial, holding:

> *Defendant Waived His Right To Remain Silent*
> Defendant argues the trial court erred in admitting evidence obtained
> during his interrogation because he never confirmed that he understood his rights
> under *Miranda,* nor did he waive them.  Defendant argues "[n]othing which
> followed the advisement [of defendant's *Miranda* rights] can be construed as a
> waiver of those rights, save his response to questioning.  Defendant's
> 'MmMumm' reply to whether he understood the advisement of rights is
> equivocal; it is not an affirmative response.  Further, his immediate request to
> have his father present is another indication that he either did not understand his
> rights or that he was not willing to talk to the police without a counselor present."
> Defendant is wrong.
> Defendant's interrogation started out as follows:
> "Det[ective Keeney]:  The first thing I want to do is get some information
> about you.
> "Def[endant]:  Uh-huh.
> "Det[ective Keeney]:  Your full name?
> "Def[endant]:  Teng Yang.  [Break in videotape.]
> "Det[ective Keeney]:  Okay.  No middle name?
> "Def[endant]:  Nope.
> "Det[ective Keeney]:  Okay.  What's your address?
> "Def[endant]:  1719 (unintelligible).
> "Det[ective Keeney]:  And that's here in Marysville?
> "Def[endant]:  Uh, yes sir.
> "Det[ective Keeney]:  Uh, where do you go to school?
> "Def[endant]:  Right now, I'm enrolled in (unintelligible).
> "Det[ective Keeney]:  Okay.
> "Def[endant]:  . . . but I went to a meeting today.
> "Det[ective Keeney]:  Okay.  So you don't know where you're going to
> school right now?
> "Def[endant]:  Uh, I'm enrolled in (unintelligible).
> "Det[ective Keeney]:  Okay.  What grade?
> "Def[endant]:  Uh, senior.

"Det[ective Keeney]:  How old are you?

"Def[endant]:  Seventeen.

"Det[ective Keeney]:  What's your date of birth?

"Def[endant]:  12-07-84.

"Det[ective Keeney]:  Phone number?

"Def[endant]:  749-, wait, 742-4229.

"Det[ective Keeney]:  Okay.  Okay, Teng.

"Def[endant]:  Yeah.

"Det[ective Keeney]:  As you probably know, we're investigating a
shooting that occurred in our jurisdiction.

"Def[endant]:  MmMumm.

"Det[ective Keeney]:  Mmm, after a dance, the celebration of Mong [*sic* ]
New Year, okay.  [Videotape picks up again.] Mmm, what we would like to know
is what happened, what you saw and what went on there.

"Def[endant]: I was there . . .

"Det[ective Keeney]: You were there.

"Def[endant]:  . . . at a party.

"Det[ective Keeney]:  Okay.

"Def[endant]:  . . . yes I was, sir.

"Det[ective Keeney]:  Okay. Tell me about . . .  Okay, you have been
arrested and brought here.

"Def[endant]:  MmMumm.

"Det[ective Keeney]:  Mmm, and for us to talk to you, okay, um, we have
to read you your rights.  You understand that.

"Def[endant]:  Al lright [*sic*].

"Det[ective Keeney]:  Okay. Mmm, I don't know if its been done.  Have
you ever had that done to you before?

"Def[endant]:  What.

"Det[ective Keeney]:  Your rights read to you?

"Def[endant]:  Yeah.

"Det[ective Keeney]:  Okay, you have.

"Def[endant]:  MmMumm.

"Det[ective Keeney]:  Okay, mmm, you have the right to remain
silent . . . .

"Def[endant]:  MmMumm.

"Det[ective Keeney]:  [A]nything you say can and will be used against you
in a court of law.  You have the right to an attorney, if you cannot afford an
attorney, an attorney will be appointed to you by the court.  Okay.  Understand
that.

"Def[endant]: MmMumm.

"Det[ective Keeney]:  Okay.  Mumm.

"Def[endant]:  Can I have my dad here?

"Det[ective Keeney]:  Can you have your dad here?

"Def[endant]:  Yeah.

19

"Det[ective Madden]:  Mmm, Teng, i [*sic* ] . . . you know we might be able to facilitate that and have him come here, but I think it's important for us to just kind of get an idea of, you know, we know you were there, we just need to kind of know what was goin' on.  You know, and what happened.  Mumm, we came all the way down from Chico, and you know, at some point I can probably get this deputy to call your dad and see if he wants to come down, but mumm . . . .

"Def[endant]:  Well, can you do that?

"Det[ective Keeney]: . . . we'd like to talk to you about it though.

"Def[endant]:  MmMumm.

"Det[ective Keeney]:  Okay.  Mumm . . .

"Def[endant]:  Well, I just want him here when you're talking to me.  Is it possible, 'cause ''m a minor?

"Det[ective Keeney]:  Well, that really has nothing to do with it.

"Def[endant]:  Okay.

"Det[ective Keeney]:  Okay."

During the remainder of the interview, before he was informed he was under arrest, defendant did not repeat his request for his father, nor did he indicate any unwillingness to speak to the detectives about the events of the shooting.  Only after the detectives told defendant to stand up and put his hands behind his back did he reiterate his request to speak with his father.  When the detectives told defendant they would tell his father he had been arrested, defendant asked if he could speak to his father himself.  The detectives told him he could not.  Defendant asked the detectives a fourth time if he could speak with his father.  At this point in time, the detectives told him, not right now, but maybe later.  When the detectives asked defendant why he wanted his father at the interview, defendant replied, "So he could tell him . . . take [*sic*] to him."  Defendant said he would have told his father that he was not the shooter.

Defendant moved to exclude statements he made to detectives when he was arrested because those statements were taken in violation of *Miranda.*  Defendant argued only that he did not waive his rights under *Miranda,* not that he affirmatively invoked them.  The trial court reviewed the videotape of the interrogation and the transcript and denied this motion.  The court concluded defendant did not expressly waive his right, but did so by implication when he indicated he understood his rights and willingly answered the detectives' questions.

A defendant's waiver of his rights under *Miranda* need not be express "where a defendant's actions make clear that a waiver is intended." (*People v. Whitson* (1998) 17 Cal.4th 229, 250.)  The People have the burden of demonstrating waiver by a preponderance of the evidence. (*Id.* at p. 248.)  To determine whether a defendant has waived his or her rights, the trial court must examine two distinct components:  "'First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness of both the nature of the right being

abandoned and the consequences of the decision to abandon it.  Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda [*sic*] rights have been waived.  [Citations.]  [¶] . . .  [¶] . . .  Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law.'" (*Id.* at p. 247.)

In *People v. Hector* (2000) 83 Cal.App.4th 228, 234 (*Hector),* the defendant argued his "'request to speak to his mother for advice was a clear invocation of his right to remain silent which required questioning to immediately cease and made his subsequently given confession inadmissible.'"  The appellate court disagreed.  The court started by examining *People v. Burton* (1971) 6 Cal.3d 375, where our Supreme Court concluded that a minor's request to see his parents, "'"must, in the absence of evidence demanding a contrary conclusion, be construed to indicate that the minor suspect desires to invoke his Fifth Amendment privilege.  The police must cease custodial interrogation immediately upon exercise of the privilege.  [If the police do not cease], the confession obtained by the subsequent questioning [is] inadmissible, and, therefore, the admission of such confession [is] prejudicial per se and compels reversal of the judgment . . . . [Citation.]'"  (*Hector,* at p. 234.)

The *Hector* court noted that subsequent to *Burton,* the United States Supreme Court decided *Fare v. Michael C.* (1979) 442 U.S. 707 [61 L.Ed.2d 197].  There, the court concluded that a minor's request for his probation officer during the interrogation did not constitute a per se invocation of the juvenile's Fifth Amendment rights.  (*Hector, supra,* 83 Cal.App.4th at pp. 234-235.)  Rather, the United States Supreme Court concluded, "'the determination whether statements obtained during custodial interrogation are admissible against the accused is to be made upon an inquiry into the totality of the circumstances surrounding the interrogation, to ascertain whether the accused in fact knowingly and voluntarily decided to forgo his rights to remain silent and to have the assistance of counsel.  [Citation.]'  [Citation.]  When determining whether a juvenile's waiver is voluntary, courts should consider the juvenile's 'age, experience, education, background, and intelligence, and . . . whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.  [Citation.]'  [Citation.]" (*Hector,* at p. 235.)

The *Hector* court concluded, whether a minor's request for a parent is an invocation of his Miranda rights depends on the totality-of-the-circumstances test set forth in *Fare v. Michael C.* (1979) 442 U.S. 707 [61 L.Ed.2d 197].  (*Hector, supra,* 83 Cal.App.4th at p. 235.)  Our Supreme Court has reaffirmed the application of this test to waivers of rights by minors.  (*People v. Lewis* (2001) 26 Cal.4th 334, 383.)

"In considering a claim that a statement or confession is inadmissible because it was obtained in violation of a defendant's rights under *Miranda v. Arizona, supra,* 384 U.S. 436, we accept the trial court's resolution of disputed facts and inferences, and its evaluation of credibility, if supported by substantial evidence. [Citation.]  Although we independently determine whether, from the undisputed facts and those properly found by the trial court, the challenged statements were illegally obtained [citation], we '"give great weight to the considered conclusions" of a lower court that has previously reviewed the same evidence.' [Citations.]"  (*People v. Wash* (1993) 6 Cal.4th 215, 235-236.)

Here, the trial court did not err in concluding defendant's statements were admissible.  We have reviewed the videotape of the interrogation.  We reject defendant's first argument that no evidence shows he affirmatively acknowledged he understood his *Miranda* rights.  The officers provided full and adequate admonitions to defendant.  Defendant's manner, posture, and statements of "MmMumm" both during and after the admonitions demonstrates he affirmatively understood his rights and conveyed that fact to the interrogating officers.  Contrary to defendant's argument, we conclude defendant's use of the colloquialism "MmMumm" was a statement in the affirmative, not an unintelligible or equivocal grunt.

While defendant did not expressly waive his rights, his subsequent statement, when analyzed under the totality of the circumstances, demonstrates waiver.  Defendant's responses to the officers' questions were given voluntarily.  His willingness to speak to the officers is readily apparent from the interview.  Nothing about the interrogation suggests the police resorted to any physical or psychological pressure to elicit statements from him.  (See *People v. Whitson, supra,* 17 Cal.4th at pp. 248-249.)  He was not worn down by "improper interrogation tactics, lengthy questioning, or trickery or deceit."  (*Id.* at p. 249.)

On the second question of defendant's awareness of the rights he was abandoning and of the consequences of his decision to do so, defendant acknowledged that he had been advised of his *Miranda* rights prior to this interrogation.  Further, he listened intently as his rights were read to him, nodded his head showing his understanding, and affirmatively indicated he understood those rights at the end of the admonishments.  At the time of his interrogation, defendant was two months shy of his 18th birthday.  Nothing in the videotape suggests defendant did not understand those rights, or that his judgment was clouded or impaired in any way.  Nothing suggested that defendant was of low intelligence.  Defendant's answers were clear and responsive to the detectives' questions and without any further objections.  Defendant's request to speak with his father in these circumstances did not demonstrate an intent to invoke his rights.  As defendant later explained, his request to speak with his father was to explain to him "that it wasn't me."

22

On this record, the trial court did not err in concluding defendant knowingly and intelligently waived his rights under *Miranda*.  The statements were admissible.[58]

Under *Miranda*, inculpatory statements made by a defendant during an interrogation while in police custody are inadmissible unless the defendant has been informed of his rights to remain silent and to the assistance of counsel and, after having been given the *Miranda* warning, waives those rights.[59]  It is undisputed that Yang was advised of his *Miranda* rights.  The sole issue presented is whether Yang voluntarily waived his *Miranda* rights.  Even absent the accused's invocation of the right to remain silent, the accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused "in fact knowingly and voluntarily waived [his or her *Miranda*] rights" when making the statement.[60]  The waiver, however, need not be express and may be implied by all the circumstances.[61]  The appropriate test is the "totality of the circumstances."[62]  To establish a valid waiver, the State must establish three elements:  (1) a *Miranda* warning was given; (2) the accused understood his or her rights; and (3) the statement was uncoerced.[63]  These elements must be established by a preponderance of the evidence.[64]

---

[58] *Yang II*, 2007 WL 2219286 at *5-*9 (alterations in the original).

[59] *North Carolina v. Butler*, 441 U.S. 369, 372-73 (1979) (quoting *Miranda*, 384 U.S. at 475).

[60] *Id.* at 373.

[61] *Id.* at 373, 376.

[62] *See Fare v. Michael C.*, 442 U.S. 707, 725 (1979) (totality of the circumstances analysis is appropriate to determine the validity of a juvenile's *Miranda* waiver).

[63] *Berghuis v. Thompkins*, 560 U.S. ___, ___, 130 S. Ct. 2250, 2261-62 (2010).

[64] *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

In the context of invoking the *Miranda* right to counsel, a suspect must do so "unambiguously."[65]  If an accused makes a statement concerning the right to counsel "that is ambiguous or equivocal" or makes no statement, the police are not required to end the interrogation,[66] or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights.[67]  Yang contends that the inculpatory statements were *per se* inadmissible as his request to speak to his dad was tantamount to a request for counsel.  This argument does not form a basis for federal habeas relief.  The Supreme Court has not held that the request to speak to a parent or grandparent is tantamount to a request for counsel so as to render any statements made following such a request *per se* inadmissible under the Fifth and Fourteenth Amendments.[68]

In the context of the right to remain silent, as with the right to counsel, a suspect must do so unambiguously.  If the statement is ambiguous or equivocal, or if no statement is made, the police are not required to either end the interrogation or seek clarification whether or not the accused wants to invoke his or her *Miranda* rights.[69]

---

[65] *Davis v. United States,* 512 U.S. 452, 459 (1994).

[66] *Id.*

[67] *Id.* at 461-462.

[68] *See* 28 U.S.C. § 2254(d)(1); *Fare,* 442 U.S. at 719 ("The *per se* aspect of *Miranda* was thus based on the unique role the lawyer plays in the adversary system of criminal justice in this country."); *see also People v. Lessie,* 223 P.3d 3, 13 (2010) (in disapproving its prior decision in *People v. Burton*, 491 P.2d 793 (1971), noted that *Fare* left no room for the proposition that a minor's request for a parent renders his statements *per se* inadmissible under *Miranda;* waiver in such cases must be evaluated by looking at the totality of the circumstances).

[69] *Berghuis,* 560 U.S. at ___, 130 S. Ct. at 2259-60 (2010) (applying the *Davis* rule on the right to counsel to the right to remain silent).

In this case, both the Butte County Superior Court and the California Court of Appeal found that Yang fully understood his *Miranda* rights, did not unambiguously invoke those rights, and voluntarily made an uncoerced statement in response to the questions of the police.  Yang has not established by clear and convincing evidence that these findings were erroneous.[70]  Thus, based upon the record before it, this Court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[71]  Yang is not entitled to relief under his second ground.

Ground 3:  Bifurcation of Gang-Related Enhancement

Yang contends that the trial court abused its discretion by failing to bifurcate for trial the gang enhancement allegations from the underlying assault charge.  Yang makes two arguments.  First, Yang argues that the gang enhancement evidence was only marginally relevant to either his identity as the shooter or the motives for the crime.  Yang also argues that, because the evidence portrayed him as a member of a criminal gang whose primary activities were assault with deadly weapons, attempted murder, and shooting at inhabited buildings, it cast him in a "sinister light" and was unduly prejudicial.[72]  The California Court of Appeal rejected Yang's arguments, holding:

---

[70] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

[71] 28 U.S.C. § 2254(d).

[72] Yang does not contend that the gang-related enhancement allegation was otherwise improperly joined with the assault charge.

25

*The Court Did Not Err In Refusing To Bifurcate*
*The Gang Enhancement Allegations*

Defendant argues the trial court abused its discretion in refusing to bifurcate the gang enhancement allegations from the trial of the underlying crime. We disagree.

In limine, defendant moved to bifurcate the gang enhancement allegations. The trial court denied the motion. The court concluded that the gang allegations were relevant as to the nature of the underlying crime and were also probative on the issues of defendant's motive and intent. Thus, the court concluded the gang evidence was "inextricably connected to those issues of identification, motive, [and] intent."

In *People v. Hernandez* (2004) 33 Cal.4th 1040, 1046, 1051, our Supreme Court determined that the trial court did not abuse its discretion in denying defendant's motion to bifurcate the gang enhancement charges from the underlying charges of robbery. The court noted that a trial court has the discretion to bifurcate certain issues such as prior convictions from the determination of the defendant's guilt of the charged offense. (*Id.* at p. 1048.) The *Hernandez* court, however, distinguished the prior conviction—which relates to the defendant's status and is often not connected to the instant crime—from the criminal street gang enhancement allegations—which is, by definition, inextricably linked to the defendant's crime. (*Ibid.*) On this latter point, the *Hernandez* court explained, "Evidence of the defendant's gang affiliation—including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like—can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime." (*Id.* at p. 1049.) Bifurcation is thus warranted only when the other evidence of the predicate acts required to establish the gang enhancement is unduly prejudicial, or when gang evidence about the defendant is "so extraordinarily prejudicial, and of so little relevance to guilt, that it threatens to sway the jury to convict regardless of the defendant's actual guilt." (*Id.* at p. 1049.)

Drawing from cases discussing the standard for severance of charged offenses, the *Hernandez* court stated, "when the evidence sought to be severed relates to a charged offense, the 'burden is on the party seeking severance to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried. [Citations.] When the offenses are joined for trial the defendant's guilt of all the offenses is at issue and the problem of confusing the jury with collateral matters does not arise. The other-crimes evidence does not relate to [an] offense for which the defendant may have escaped punishment. That the evidence would otherwise be inadmissible may be considered as a factor suggesting possible prejudice, but countervailing considerations that are not present when evidence of uncharged offenses is offered must be weighed in ruling on a severance motion. The burden is on the defendant therefore to persuade the court that these countervailing considerations are outweighed by a substantial

26

danger of undue prejudice." (*People v. Hernandez, supra,* 33 Cal.4th at p. 1050.)
We review the trial court's decision under the deferential abuse of discretion
standard of review. (*Id.* at pp. 1050-1051.)

      Here, we detect no abuse of discretion by the trial court in denying the
motion for bifurcation. Defendant's connection to the gang was relevant to his
identity as the shooter and the motive for the crime. The MBC gang "mad
dogged" the shooting victim's group throughout the dance. Then, MBC left both
in front of and behind the group, surrounding it in a menacing fashion. As is
evident from our recital of the facts in this case, the question of the identity of the
shooter was central in this case. Defendant was wearing gang colors. Further, a
prior gang-related fight was suggested as the possible motive for this shooting.
The gang's involvement may have also had some relevance to some of the
witnesses' reluctance to name the shooter right after the dance. Defendant's
admissions of gang membership, and his possession of photographs of gang
members, further tied him to this crime. Under these circumstances, the gang
evidence admitted about defendant was relevant to his guilt and not unduly
prejudicial.

      The evidence of the other predicate crime committed by Se Yao Xiong
was not unduly prejudicial. The fact that another gang member had been
convicted of attempted murder, assault with a deadly weapon, shooting at
dwellings, and car theft was not particularly inflammatory. It took up very little
trial time. This evidence was offered to prove the charged gang enhancement, so
no problem of confusion with collateral matters arose and there was no question
of whether defendant escaped punishment in that other case that would cause the
jury to be swayed to convict him here. The trial court did not err.[73]

The California rule regarding severing joined counts for separate trial in a criminal

prosecution is similar to the federal rule.[74] As under California law, whether to sever counts

under the federal rule is within the discretion of the trial court.[75] To constitute an abuse of

discretion under the federal rule, joint trial of the counts must be "manifestly prejudicial."[76]

---

[73] *Yang II*, 2007 WL 2219286 *15-*17 (alterations in the original).

[74] *See* Fed. R. Crim. P. 14(a) (permitting separate trials of counts where joinder would
prejudice either the defendant or the government).

[75] *United States v. Kinslow*, 860 F.3d 963, 966-67 (9th cir. 1988), *overruled on other
grounds by United States v. Brackeen*, 969 F.2d 827, 829 (9th Cir. 1992) (en banc).

[76] *See id.*; *United States v. Smith*, 795 F.2d 841, 850 (9th Cir. 1986).

Under the deferential standard of AEDPA, in light of the lack of any Supreme Court precedent to

the contrary and the unchallenged decisons of the federal courts in applying the analogous federal

rule, this Court cannot say that the decision of the California Court of Appeal was "contrary to,

or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States" or "was based on an unreasonable determination of the facts

in light of the evidence presented in the State court proceeding."[77]   Yang is not entitled to relief

under his third ground.

Ground 4:  Gang Membership Instruction

Yang contends that the jury was erroneously charged with the following special

instruction:

> Evidence has been introduced for the purpose of showing gang
> membership and association and information on the gang's culture.
> Such evidence, if believed, was not received and may not be considered by
> you to prove the defendant is a person of bad character or that he has a disposition
> to commit crimes.
> Such evidence was received and may be considered by you only for the
> limited purpose of determining if it tends to sho[w]:
> 1.  The existence of the specific intent and knowledge which are necessary
> elements of the gang crimes and enhancements charged,
> 2.  A motive for the commission of the crimes charged,
> 3.  Its effect, if any, on a witness' testimony.
> For the limited purposes for which you may consider such evidence, you
> must weigh it in the same manner as you do all other evidence in the case.
> You are not permitted to consider such evidence for any other purpose.[78]

Respondent contends that the instruction was not given and, even if given, it was harmless error.

The California Court of Appeal, in rejecting Yang's position, held:

---

[77] 28 U.S.C. § 2254(d).

[78] *Yang II*, 2007 WL 2219286 at *21 n.5 (alterations in the original).

*The People's Special Instruction Was Not Given*

In supplemental briefing, defendant argues a special instruction proffered by the People should not have been given because a portion of it instructed the jury it could consider gang evidence for its "effect" on the testimony of witnesses in the case.

According to defendant, there was no evidence the witnesses knew defendant was a gang member or of the fact that he effected their testimony. We reject this argument.

"We must indulge in every presumption to uphold a judgment, and it is defendant's burden on appeal to affirmatively demonstrate error—it will not be presumed." (*People v. Garcia* (1987) 195 Cal.App.3d 191, 198.)  It was thus defendant's burden to present a record that affirmatively demonstrated error.  He has failed to meet that burden.

Although the special instruction was included in the clerk's transcript as part of the "Instructions Given," the trial court did not read this instruction to the jury.  Further, this instruction was one of only two instructions proffered by the People contained in the package of "Instructions Given" that do not have the trial judge's signature and notation that they were given.  While the instructions indicate that a copy of the written instructions would be provided to the jury, the record does not affirmatively demonstrate the special instruction defendant complains about was presented to the jurors in the package of instructions they received.  Defendant could have moved to augment the record to provide this court with a copy of the instructions physically handed to the jurors (Cal. Rules of Court, rule 12(a)), but he did not do so.  Having failed to demonstrate this jury instruction was given to the jury, defendant's claim this instruction was erroneous fails.[79]

As the Respondent correctly points out, this Court is bound by the factual findings of the California courts unless Yang rebuts those factual findings by clear and convincing evidence.[80] This includes factual findings by an appellate court.[81]  Yang also has the burden of establishing constitutional error by a preponderance of the evidence.[82]  Yang has failed to point to any

---

[79] *Id.*, at *21 (footnote quoting the allegedly erroneous instruction omitted).

[80] 28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 340.

[81] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

[82] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis

(continued...)

evidence in the record that rebuts the factual finding of the California Court of Appeal that the jury was not charged with the allegedly flawed instruction.  Yang is not entitled to relief under his fourth ground.

<u>Ground 5:  Re-Sentence to Upper Terms on Both Convictions</u>

Yang contends that re-sentencing him under *Sandoval*, decided after he committed his crime, violated the *Ex Post Facto* Clause of the United States Constitution.  Yang argues that persons who were sentenced prior to the *Sandoval* decision received more favorable treatment that those who, like Yang, were sentenced under *Sandoval*.  Yang raised this issue in *Yang III*.[83] In rejecting Yang's position, the California Court of Appeal held:

> Defendant Teng Yang appeals from his resentencing pursuant to *People v. Sandoval* (2007) 41 Cal.4th 825 (*Sandoval* ).  He contends the trial court improperly used the same facts to impose the upper term on both an offense and an enhancement.
>
> Acknowledging that this contention was not raised in the trial court, he claims ineffective assistance of counsel.  We shall conclude the contention is <u>forfeited and lacks merit in any event</u>.  Therefore, we shall affirm.[FN1]
>
>> FN1. Defendant also raises a constitutional challenge to the resentencing procedure authorized by *Sandoval* to preserve the issue for federal review. He acknowledges that this court is bound by *Sandoval*.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)
>
> [Procedural background omitted]
>
> Defendant contends the trial court made improper dual use of facts to impose the upper term on the assault count and the enhancement.[FN4]  The <u>contention is forfeited, but even if it</u> were properly before us it could not succeed.
>
>> FN4.  It is not entirely clear whether defendant means this contention to apply to all of the facts the trial court cited to impose upper terms, or only to the fact the court used for the first time on remand: the infliction of great bodily injury.  After arguing that the court made improper dual use of

---

[82](...continued)
of little more than speculation with slight support").

[83] Although Yang also raised an ineffective assistance of counsel claim related to this ground in the California Court of Appeal, he does not raise that issue in his Petition to this Court.

that fact, defendant asserts that the court's "error" was not harmless because the other two facts the court cited (victim vulnerability, and planning or sophistication) were not supported by the evidence. Because we find that defendant's entire argument is forfeited, we need not address this point.

If a defendant fails to object to the trial court's exercise of sentencing discretion and statement of reasons therefor, any appellate claim of sentencing error is forfeited. (*People v. Scott* (1994) 9 Cal.4th 331, 356.) The only exception to this rule is if the sentence is unauthorized, meaning that it could not have been legally imposed under any circumstances. (*Id.* at p. 354.)

Defendant does not assert that the sentencing in this case was unauthorized; he concedes that his failure to object to the trial court's sentencing decisions forfeits his claim of error. He claims, however, that his trial counsel's failure to object constituted ineffective assistance of counsel. We reject this contention because defendant's proposed objection would have had no chance to succeed. (*People v. Majors* (1998) 18 Cal.4th 385, 403 [not ineffective assistance to refrain from futile objections].)

Defendant does not cite authority holding that a trial court may not use the same facts to impose the upper term on both an offense and a related enhancement: he merely asserts that this must be so by "analogy" to situations in which dual use of facts is prohibited. His analogy fails.

The trial court acted in conformity with the applicable sentencing rules. Rule 4.420(c) of the California Rules of Court (which the court cited) provides: "To comply with section 1170(b), a fact charged and found as an enhancement may be used as a reason for imposing the upper term only if the court has discretion to strike the punishment for the enhancement and does so." The trial court complied with section 1170, subdivision (b) and rule 4.420(c) by striking the punishment for the great bodily injury enhancement found true by the jury, then using that fact instead as a reason for imposing the upper term as to both the assault count and the remaining enhancement.

Because defendant has not shown why the trial court could not have used the same facts to impose the upper term on both the offense and the enhancement, his claim that trial counsel was ineffective for not objecting to this sentencing decision fails.[84]

Neither the California Court of Appeal nor the California Supreme Court specifically

addressed the issue of whether the application of *Sandoval* to cases in which the criminal offense

occurred before it was handed down violates the *Ex Post Facto* Clause. When there is no

---

[84] *Yang III*, 2008 WL 5274667 at *1-*2.

reasoned state court decision denying an issue presented to the state "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[85]   In this case, it is obvious that the California Court of Appeal did not address the constitutionality of applying *Sandoval* in this case as it was procedurally bound to apply *Sandoval* by the California Supreme Court decision in *Equity Auto*. Nor, in the absence of a lower court decision addressing the merits, either directly or presumptively, can the denial of review by the California Supreme Court be construed as a decision on the merits.[86]   Consequently, there is no "reasoned decision" of the California courts to which this Court must defer.   Reviewing the decision de novo, Yang's *ex post facto* argument is foreclosed by the decision of the Ninth Circuit in *Choiino* that the application of *Sandoval* on re-sentencing does not violate the *Ex Post Facto* Clause.[87]

With respect to his equal protection claim, Yang presents no factual support for his conclusory allegation that persons sentenced prior to *Sandoval* were given more favorable treatment that those sentenced under *Sandoval*.   Yang has the burden of showing by a preponderance of the evidence that he merits habeas relief.[88]   The petition must specify all the grounds for relief available to the petitioner and the facts supporting each ground.[89]   As the Supreme Court has stated:

---

[85] *Harrington v. Richter*, 562 U.S. ___, ___, 131 S. Ct. 770, 784-85.

[86] *See Williams v. Cavazos*, ___ F.3d ___, 2011 WL 1945744 at * 6 (9th Cir. May 23, 2011).

[87] *Chioino v. Kernan*, 581 F.3d 1182, 1185-86 (9th Cir. 2009); *Butler v. Curry*, 528 F.3d 624, 652 n. 20 (9th Cir. 2008).

[88] *Silva*, 279 F.3d at 835; see *Wood*, 516 U.S. at 8.

[89] Rules—Section 2254 Cases, Rule 2(c).

Habeas Corpus Rule 2(c) is more demanding.  It provides that the petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground."  See also Advisory Committee's Note on subd. (c) of Habeas Corpus Rule 2, 28 U.S.C., p. 469 ("In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts.  [But] it is the relationship of the facts to the claim asserted that is important . . . ."); Advisory Committee's Note on Habeas Corpus Rule 4, 28 U.S.C., p. 471 ("'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." (internal quotation marks omitted)).  Accordingly, the model form available to aid prisoners in filing their habeas petitions instructs in boldface:

> **"CAUTION:  You must include in this petition <u>all</u> the grounds for relief from the conviction or sentence that you challenge.  And you must state the facts that support each ground.  If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date."**
> Petition for Relief From a Conviction or Sentence By a Person in State Custody, Habeas Corpus Rules, Forms App., 28 U.S.C., P. 685 (2000 ed., Supp. V) (emphasis in original).

A prime purpose of Rule 2(c)'s demand that habeas petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to "show cause why the writ should not be granted."  § 2243.  Under Habeas Corpus Rule 4, if "it plainly appears from the petition . . . that the petitioner is not entitled to relief in the district court," the court must summarily dismiss the petition without ordering a responsive pleading.  If the court orders the State to file an answer, that pleading must "address the allegations in the petition." Rule 5(b).[90]

If it plainly appears on the face of the petition that petitioner is not entitled to relief, a district court must dismiss the petition.[91]  It plainly appears from the Petition that Yang is not entitled to relief under his fifth ground and that ground must be dismissed.

## V.  CONCLUSION AND ORDER

Yang is not entitled to relief on any ground raised in his Petition.

---

[90] *Mayle v. Felix*, 545 U.S. 644, 655-56 (2005).

[91] Rules—Section 2254 Cases, Rule 4.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[92]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[93]

The Clerk of the Court is to enter judgment accordingly.

Dated:  August 10, 2011.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

---

[92] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705-06 (2004) ("to obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's  resolution of his constitutional claims or that jurists could conclude  the issues presented are adequate to deserve encouragement to proceed further.'") (quoting *Miller-El*, 537 U.S. at 327)).

[93] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.